## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOHNNY R.,[1]

      **Plaintiff,**

                                  **Case No. 2:20-cv-12818**

     **v.**                           **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      **Defendant.**

### <u>OPINION AND ORDER</u>

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Johnny R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

## I.    PROCEDURAL HISTORY

On August 7, 2017, Plaintiff filed his applications for benefits, alleging that he has been disabled since July 12, 2017. R. 287–88, 612–27. The applications were denied initially and on reconsideration. R. 11, 289–97. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 303–05. Administrative Law Judge Dina Loewy ("ALJ") held a hearing on April 11, 2019, at which Plaintiff, who was represented by counsel, testified. R. 245–64. On October 3, 2019, the ALJ held another hearing at which a medical expert and a vocational expert testified. R. 200–44. In a decision dated December 11, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 12, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 11–20. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 15, 2020. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 4, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On June 8, 2021, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

4

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 45 years old on July 12, 2017, his alleged disability onset date. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 13.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: coronary artery disease; status post myocardial infarction; peripheral vascular disease, status post coronary bypass graft; chronic heart failure; and angina. *Id.*  The ALJ also found that "any other condition, not specifically mentioned in this decision, but mentioned briefly in the record is non-severe" and "that those impairments that are not specifically mentioned reveal only a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience, and are therefore, non-severe." R. 14.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 14–18. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a short order cook. R. 18.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* jobs as a charge account clerk, a food/beverage order clerk, and an addresser—existed in the national economy and could be performed by Plaintiff. R. 18–19.

The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 12, 2017, his alleged disability onset date, through the date of the decision. R. 19–20.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 21. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 25.

## IV.   DISCUSSION

### A.   RFC and Opinion Evidence

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to provide "the required itemization of plaintiff's capacity on a 'function-by-function' basis" and failed to explain "how long plaintiff can sit, how long or far he can walk, or how much he can lift/carry[.]" *Plaintiff's Moving Brief*, ECF No. 21, pp. 12–19. Plaintiff also complains that "the RFC also seems predicated on the ALJ's refusal to acknowledge plaintiff's chronic hypertension/hypertensive cardiovascular disease as constituting 'severe impairments[.]'" *Id.* at 19–24. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler,* 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency

8

consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is limited to occasional push or pull; never use foot controls; occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, or stoop; never kneel, crouch, or crawl; avoid concentrated exposure to extreme temperatures, wetness, and humidity; and avoid all exposure to hazardous machinery, unprotected heights, and operation control of moving machinery.

R. 14. In making this determination, the ALJ detailed years of record evidence, including Plaintiff's history of coronary artery disease and hypertension; Plaintiff's July 2017 presentation at an emergency room with chest pain and shortness of breath and diagnosis of unstable angina and coronary artery disease; Plaintiff's coronary artery bypass grating surgery and left heart catheterization with a coronary angiography to stabilize the angina and discharge in stable condition; Plaintiff's October 2017 bilateral lower limb arterial duplex that found left mid superficial femoral artery stenosis of 20 to 49 percent in the left lower extremity and mild diffuse

9

atherosclerosis of the right lower extremity; Plaintiff's December 2017 report to his treating cardiologist, Supreeti Behuria, M.D., of significant improvement and denial of chest pain, shortness of breath, palpitations, syncope, PND or orthopnea, leg swelling or claudication, and his reported ability to walk four blocks without symptoms; Dr. Behuria's findings on physical examination that were within normal limits; Plaintiff's normal blood pressure readings at home and Dr. Behuria's suspicion of "white coat hypertension" in the office; Dr. Behuria's March 2018 treatment notes that documented significant improvement in Plaintiff's condition and Plaintiff's denial of chest pain, shortness of breath, palpitations, syncope, orthopnea or paroxysmal nocturnal dyspnea; Plaintiff's complaint of claudication in the lower extremities when walking, but reported ability to walk about four blocks without symptoms; physical examinations that found Plaintiff to be in no acute distress, with normal pulmonary, respiratory, musculoskeletal, and neurological functioning, as well as normal extremities and peripheral pulses; findings of regular rate and rhythm, normal S1 and S2, no murmurs, rubs or gallops but intermittent claudication and essential white coat hypertension for which he was advised to continue his medications, and coronary artery disease; the fact that there had been no further cardiac follow-up visits with Dr. Behuria since March 2018; Plaintiff's seven visits with his primary care provider, Teresa Chan, M.D., between July 2018 and May 2019, during which Plaintiff's blood pressure readings ranged from 145/75 to 222/106 (which the doctor suspected were white coat induced), but during which other findings were normal, including normal cardiovascular functioning and gait; Plaintiff's December 2018 report that his blood pressure reading at home was consistently 140/75; and Plaintiff's failure to return to his cardiologist for follow up care despite repeated requests by Dr. Chan and continued conservative medical treatment for his hypertension. R. 15–16. The ALJ also explained why she found that Plaintiff's

10

allegations were not consistent with the objective medical evidence:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his [ ] symptoms, they are not entirely consistent with the medical record. The claimant alleged that he has not been able to work since his bypass surgery in 2017. The claimant alleged that he did not leave his house much and only traveled when needed. The claimant stated he was unable to walk more than one or two blocks before experiencing dizziness and chest pains. The claimant testified he would then sit and rest for 20 minutes before he walked again. The claimant also alleged being able to stand between 20 to 25 minutes and to be able to sit 25 minutes before feeling dizzy. He testified that he was unable to lift and/or carry more than eight pounds. (Hearing Testimony).

> However, these allegations are not entirely consistent with the claimant's objective medical reports, physical examinations, and his own physician's opinion. The claimant's cardiologist limited the claimant to lifting and/or carrying up to 10 pounds, but found no limitations in the claimant's ability to walk, stand, or sit. (5F, pg. 5). Likewise, the claimant showed a stable condition after his surgery and has only required conservative medical treatment thereafter. Likewise, the claimant showed a left ventricle ejection fraction rate of 55 after his surgery and denied having any chest pain, dyspnea, or fatigue as of 2019. (1F; 4F; 5F; 7F; 8F). Instead, the undersigned finds that the residual functional capacity is more consistent with the medical record, while also giving the claimant the benefit of the doubt.

R. 16–17. The ALJ further considered the opinion of Dr. Behuria as follows:

> The claimant's treating cardiologist opined that the claimant was limited to lift and carry up to 10 pounds, but had no other limitation. (5F, pgs. 4-6). Importantly, he noted that *there was no evidence of end organ damage as a result of the claimant's hypertension*. This is consistent with a claimant that experiences bilateral leg pain due to his peripheral vascular disease and his past cardiovascular impairments. Nevertheless, the claimant has shown mostly normal physical examinations with a normal gait and cardiovascular functioning. Likewise, the claimant has denied any other episodes of chest pain, dyspnea, or fatigue. Lastly, the claimant received conservative medical treatment after his emergency surgery in July 2017. (1F; 4F; 5F; 7F; 8F). Although the undersigned has given the claimant additional limitations to provide the claimant with the benefit of the doubt, the undersigned finds that the residual functioning capacity assessment accurately reflects the claimant's limitations.

R. 17. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, contends that substantial evidence does not support the RFC determination because the ALJ failed to provide a function-by-function analysis and failed to explain how long Plaintiff can sit, stand, walk, lift, and carry. *Plaintiff's Moving Brief*, ECF No. 21, pp. 12–19. The Court is not persuaded that this issue requires remand. While an ALJ's RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[,]" SSR 96-8p, an ALJ is not required "to use particular language or adhere to a particular format in conducting [that] analysis[;]" instead, the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v*, 364 F.3d at 505; *see also Diciano v. Comm'r of Soc. Sec.*, No. 1:18-CV-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) ("The RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting his RFC analysis.") (citations omitted). In this case, the ALJ detailed the record evidence in a narrative discussion, considered Plaintiff's exertional and non-exertional functional limitations flowing from his impairments, and crafted an RFC that reflected those limitations. R. 14–18. Notably, the ALJ's discussion detailed above reflects that, when explaining why Plaintiff was capable of performing a limited range of sedentary work, the ALJ implicitly concluded that Plaintiff could sit for up to six hours in an eight-hour workday, could stand/walk for up to two hours in an eight-hour workday, and could lift/carry up to 10 pounds. R. 15–18; *see also* 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 83-10; *Granados v. Comm'r of Soc. Sec.*, No. CIV.A. 13-781 JLL, 2014 WL 60054, at *10 n.8, 9 (D.N.J. Jan. 7, 2014) ("Implicit in the ALJ's finding that Plaintiff could perform sedentary work is the finding that Plaintiff could sit for six hours in an eight-hour workday. . . . [and] that

Plaintiff could stand for two hours in an eight-hour workday.") (citing SSR 96–9p). Moreover, and based on this record, this Court also concludes that the ALJ complied with the requirements of SSR 96-8p. *See Cosme*, 845 F. App'x at 134 ("Prior to making his determination regarding Cosme's RFC, the ALJ reviewed the evidence in the record as he discussed Cosme's physical and mental abilities and explained the evidence he relied upon in reaching his decision and the weight accorded to it. Therefore, there is substantial evidence that the ALJ properly considered Cosme's physical and mental abilities in a function-by-function assessment prior to his RFC determination."); *Jones v*, 364 F.3d at 505; *Glass v. Comm'r of Soc. Sec*., No. CV 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("[T]he United States Court of Appeals for the Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record.") (collecting cases).

Plaintiff goes on to complain that "the RFC also *seems* predicated on the ALJ's refusal to acknowledge plaintiff's chronic hypertension/hypertensive cardiovascular disease as constituting 'severe impairments' even though it records dangerously high blood pressure readings even after plaintiff's two heart attacks and three stented arteries performed in two separate procedures in two separate hospitals[.]" *Plaintiff's Moving Brief*, ECF No. 21, pp. 19–20 (emphasis added). Plaintiff's arguments in this regard are not well taken. As a preliminary matter, Plaintiff's contention that the RFC "seems predicated" on a refusal to find other severe impairments is simply speculative. In any event, even assuming for present purposes that the ALJ erred by not including Plaintiff's hypertension and hypertensive cardiovascular disease in his severe impairments at step two of the sequential evaluation process, any such error is harmless: The ALJ decided in Plaintiff's favor at step two by finding other impairments—

13

coronary artery disease; status post myocardial infarction; peripheral vascular disease, status post coronary bypass graft; chronic heart failure; and angina—to be severe. R. 13–14. The ALJ went on to evaluate these impairments through the remainder of the five-step sequential evaluation process. R. 14–19. As detailed above, at step four, the ALJ also considered Plaintiff's hypertension or hypertensive cardiovascular disease, including any limitations flowing from these impairments. R. 15–18. Notably, as previously discussed, the ALJ considered that Dr. Behuria had opined that Plaintiff was limited to lift and carry up to 10 pounds, but that Plaintiff had no other functional limitation, and that Dr. Behuria also noted that there was no evidence of end organ damage as a result of Plaintiff's hypertension. R. 17; *see also* R. 792 (reflecting Dr. Behuria responding "No" to the question whether there was any evidence of end organ damage resulting from hypertension), 794 (opining that Plaintiff's prognosis was "Excellent" and that Plaintiff could lift/carry up to 10 pounds, but had no limitations in standing, walking, sitting, pushing, pulling, or other (such as handling objects, hearing, speaking, and traveling)). Based on this record, the ALJ's consideration of Plaintiff's hypertension will not serve as a basis for remand.

Plaintiff also contends that the ALJ erred in relying on the testimony of the medical expert, Dr. Arnold Ostrow.[4] *Plaintiff's Moving Brief*, ECF No. 21, pp. 20–24 (reflecting, *inter alia*, duplicative arguments, *compare* pp. 20–22, *with* n.7 on pp. 22–23 n.7). This Court disagrees. For claims filed after March 27, 2017,[5] the regulations eliminated the hierarchy of

---

[4] The ALJ's mistaken reference to Dr. Ostrow as "Dr. Arnold Lorber" was harmless error as the ALJ proceeded to consider the substance of Dr. Ostrow's testimony. R. 17; *see also Hudson v. Comm'r of Soc. Sec.*, 93 F. App'x 428, 430 n. 4 (3d Cir. 2004) (noting the ALJ "erroneously refers" to a physician by the wrong name but that "[t]his typographical error is immaterial to the outcome of the case"); *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003) (finding harmless error where the ALJ's mistake "would have had no effect on the ALJ's decision").
[5] As previously noted, Plaintiff's claims were filed on August 7, 2017.

medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

15

The applicable regulations further require an ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* at §§ 404.1520c(b), 416.920c(b). "Specifically, the ALJ must explain how [she] considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to— explain how [she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In this case, the ALJ considered Dr. Ostrow's testimony as follows:

Medical expert Dr. Arnold Lorber [sic] opined that the claimant's hypertension is not a severe impairment since there is no objective evidence of end organ damage to the claimant from this condition. This is consistent with the opinion of treating cardiologist, Dr. Bethura (5F, pg.3). Dr. Lorber [sic] further testified that the claimant did not meet or equal Listings 4.02. 4.04 or 4.12. He further testified that isolated readings of high blood pressure do[ ] not necessarily mean a person requires any restrictions as a result of said readings. Dr. Lorber [sic] testified that it depends on the period of time you're looking at as opposed to just some isolated readings. Dr. Lorber [sic] stated that the claimant does not meet or equal Listing 4.02 since his ejection fraction is 60%. Upon questioning regarding Listing 4.03, he stated that Listing 4.03 was eliminated. Dr. Lorber [sic] opined that the claimant would be capable of a reduced range of light work where he can lift 15 pounds occasionally, 10 pounds frequently, sit for six hours, stand and/or walk for two hours, occasionally perform postural activities, never climb ladders, ropes, or scaffolds, and never be exposed to unprotected heights. Although the undersigned gives the claimant the benefit of the doubt and limits him to sedentary work with additional limitations, the opinion of Dr. Lorber [sic] is found to be persuasive. It is supported by the claimant's physical examinations, which showed high blood pressure, but otherwise, normal findings. The claimant has been noted to have a normal gait and cardiovascular, neurological, and musculoskeletal functioning. Moreover, the claimant has only received conservative treatment after his emergency surgery, suggesting that the claimant's condition has stabilized. (1F; 4F; 5F; 7F; 8F). Even the claimant's echocardiogram post-surgery found the claimant to have a left ejection fraction rate within the normal range. (5F, pg. 17).

R. 17–18. The Court finds no error in the ALJ's consideration in this regard. *See* 20 C.F.R. §§ 404.1527, 416.927; *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination).

Plaintiff nevertheless challenges this consideration, complaining about Dr. Ostrow's credentials and age. *Plaintiff's Moving Brief*, ECF No. 21, pp. 20–24; *see also id*. at 22–23 n.7 (containing duplicative argument regarding Dr. Ostrow). However, Plaintiff never objected to Dr. Ostrow's age or qualifications during the administrative hearing when this physician testified. *See generally* R. 203–230, 244. Plaintiff's challenge before this Court therefore comes too late. *See Tonti v. Saul*, No. CV 20-92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived the right to object to that testimony."); *Brown v. Comm'r of Soc. Sec.*, No. CV 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020) ("Brown's counsel did not object to either the VE's qualifications or to her testimony in this respect. . . . Therefore, the ALJ did not err in relying on the VE's testimony.") (citations omitted).

In any event, even assuming for present purposes that the ALJ erred in her consideration of Dr. Ostrow's testimony, this testimony was but a portion of the evidence considered by the ALJ when she considered Plaintiff's severe impairments, when she determined whether Plaintiff met or medically equaled a listed impairment, and when she crafted Plaintiff's RFC. R. 13–18. The Court is not persuaded that this issue establishes reversible error.

17

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of Dr. Ostrow's opinion.

**B.      Step Five**

Finally, Plaintiff challenges the ALJ's step five determination, arguing that the Commissioner failed to carry the assigned burden at that stage because the hypothetical questions posed to the vocational expert, which included the ALJ's RFC determination, failed to include all of Plaintiff's claimed limitations. *Plaintiff's Moving Brief*, ECF No. 21, pp. 24–26. Plaintiff also contends that the jobs identified by the vocational expert "are no longer performed as described in the DOT [Dictionary of Occupational Titles]"[6] as the "DOT was last published by the Department of Labor in 1991" and the three jobs identified by the vocational expert "were last updated . . . in 1977." *Id.* at 26–30. Plaintiff's arguments are not well taken.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC and vocational profile, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Unlike atthe first four steps of the sequential evaluation process, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford*, 399 F.3d at 551). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to

---

[6] The DOT is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs generally consult to determine whether there are any jobs that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

be considered include medical impairments, age, education, work experience and RFC.'" *Id*. at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny*, 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak*, 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is

19

deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the case presently before the Court, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 14, 232–33. The vocational expert responded that the jobs of charge account clerk, food and beverage order clerk, and addresser would be appropriate for such an individual. R. 233. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical questions is that all his alleged impairments were not addressed, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

In continuing to challenge the ALJ's determination at step five, Plaintiff complains that the three jobs identified by the vocational expert—*i.e.,* charge account clerk, food and beverage order clerk, and addresser—"are no longer performed as described in the DOT [Dictionary of Occupational Titles]" as the "DOT was last published by the Department of Labor in 1991" and the three jobs identified by the vocational expert "were last updated . . . in 1977." *Id*. at 26–28. Plaintiff contends that "[a]ll of these jobs now require intricate computer literacy and keyboarding skills" and that "there is little evidence that plaintiff is computer literate at all, having been born in 1972 and spent his working life as a short order cook." *Id*. at 27–28. Plaintiff goes on to argue that the vocational expert's knowledge of these jobs was based on his professional experience, which conflicts with the DOT, a conflict which the ALJ failed to acknowledge and did not resolve, thus requiring remand in Plaintiff's estimation. *Id*. at 28–30.

20

Plaintiff's arguments are not well taken. Again, Plaintiff's counsel never objected to or challenged the vocational expert's testimony as inconsistent with the DOT at the administrative hearing. R. 232–44. Plaintiff's current attempt to raise these challenges therefore comes too late and will not serve as a basis for remand of this matter. *See Tonti*, No. CV 20-92, 2021 WL 518178, at *3; *Brown*, No. CV 19-2110, 2020 WL 1244186, at *5; *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019) (declining to remand the matter where the plaintiff's challenge to an alleged discrepancy between the vocational expert's testimony and the DOT listings was unexplored during the hearing and later raised by the plaintiff in challenging the ALJ's ruling).

In addition, Plaintiff provides no support for his bald assertion that he is not computer literate, *Plaintiff's Moving Brief*, ECF No. 21, p. 28, nor does he provide any citation to the record when referring to vocational expert testimony. *See id.* The Court will not rely on Plaintiff's mere assertion, nor will it hunt through the record to find support for that assertion. *See Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments.").

Moreover, to the extent that Plaintiff complains that the three representative jobs as described in the DOT require different skills today and that the ALJ erred in relying on the vocational expert's "conflicting" testimony in this regard, *Plaintiff's Moving Brief*, ECF No. 21, pp. 28–30, Plaintiff's argument is similarly unavailing. "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person

with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work[.]" 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). "As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT." *Zirnsak*, 777 F.3d at 617 (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). "To ensure consistency, courts have imposed an obligation on ALJs to '[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] . . . and information in the [DOT].'" *Id.* (quoting SSR 00-4p at *1). "Specifically, an ALJ is required to (1) ask, on the record, whether the [vocational expert's] testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Id.* (quoting *Burns*, 312 F.3d at 127). "An ALJ's failure to comply with these requirements may warrant remand in a particular case[,]" but "the presence of inconsistencies does not mandate remand," so long as "'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Id.* (quoting *Rutherford*, 399 F.3d at 557).

However, a vocational expert may rely on his own experience in addition to the DOT when determining whether an individual is capable of performing any work and the expert may supplement the DOT with more specific information based on the expert's own professional expertise and experience. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152–53 (2019) ("When offering testimony, the experts may invoke not only publicly available sources but also "information obtained directly from employers" and data otherwise developed from their own "experience in job placement or career counseling.") (quoting SSR 00-4p); *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189–90 (3d Cir. 2007) (finding that the ALJ did not err

22

in relying on a vocational expert who based his opinion on thirty years of his experience); *Butler v. Colvin*, No. CIV. 13-7488, 2015 WL 570167, at *9 (D.N.J. Feb. 11, 2015) (noting that judges in the Third Circuit "have encouraged" vocational experts "to rely on their experiences rather than solely on the DOT"); *Trzeciak v. Colvin*, No. CV 15-6333, 2016 WL 4769731, at *11 (D.N.J. Sept. 12, 2016) (finding substantial evidence supported the ALJ's determination that the vocational expert's testimony was consistent with the DOT where that expert "merely supplemented the DOT's job description with more specific information based on his own experience and expertise and the National Labor Statistics . . . [and] the VE testified that his testimony was consistent with the DOT").

In this case, after the vocational expert testified that a claimant with Plaintiff's vocational profile and the RFC found by the ALJ could perform such jobs as charge account clerk, food and beverage order clerk, and addresser, R. 14, 232–33, the vocational expert confirmed that his testimony was consistent with the DOT. R. 233. Upon examination by Plaintiff's counsel, the vocational expert testified that the position of charge account clerk may still perform the job on the phone rather than only online. R. 236–37. In response to additional questions from Plaintiff's counsel, and relying on his professional experience, the vocational expert also addressed issues of production, performance, time off-task, and absences. R. 240–43. This testimony did not give rise to a conflict with the DOT and the ALJ therefore did not err in relying on this testimony. *See Biestek*, 139 S.Ct. at 1155; *Horodenski*, 215 F. App'x at 189–90; *Butler*, 2015 WL 570167, at *9; *Trzeciak*, 2016 WL 4769731, at *11.[7]

---

[7] To the extent that Plaintiff's argument can be construed as suggesting that the job of addresser is obsolete, *Plaintiff's Moving Brief*, ECF No. 21, pp. 27–29, this Court and at least one other district court in this circuit have rejected that argument. *See Norabeth D. v. Kijakazi*, No. 1:21-CV-12874, 2022 WL 2952913, at *10 (D.N.J. July 26, 2022) ("Even assuming that some of the DOT occupations cited are obsolete, not all of them are. Two of the jobs cited by the ALJ—

In short, the Court finds that the Commissioner carried her burden at step five of the sequential evaluation process and the Court concludes that substantial evidence supports her determination in this regard.

## V.    CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  June 20, 2023                              *s/Norah McCann King*
                                                  NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE

---

Addresser and Call Out Operator—have clear analogs in today's economy that are not obsolete. . . . Given these analogs, neither of these jobs can properly be described as obsolete. As such, the Court finds that the ALJ committed no error in relying on them (or the VE's opinion based on them) to form her conclusions at Step Five.") (citations omitted); *Byrd v. Berryhill*, No. CV 18-40, 2019 WL 999683, at *2 (W.D. Pa. Mar. 1, 2019) (finding that the ALJ properly relied on the DOT and vocational expert testimony and rejecting Plaintiff's argument that the job of addresser is obsolete). However, even assuming that the job of addresser is obsolete, the other jobs identified by the vocational expert as available to an individual like Plaintiff, *i.e.*, charge account clerk and food/beverage order clerk, exist in significant numbers in the national economy, R. 19, 233, and would thus preclude a finding of disability.

24